UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------  x
WALTER EDWARD LEMM, JR., individually and     :
on behalf of all others similarly situated,          :
                                                     :
                              Plaintiff,             :        MEMORANDUM AND
                                                     :        ORDER
      -against-                                       :
                                                     :        No. 24-CV-903-NRM-JRC
NEW YORK COMMUNITY BANCORP,                           :
INC., THOMAS ROBERT CANGEMI and                      :
JOHN J. PINTO,                                        :
                                                     :
                              Defendants.             :
------------------------------------------------------------------  x
DALE MISKEY, individually and on                     :
behalf of all others similarly situated,             :
                                                     :
                              Plaintiff,             :
                                                     :        No. 24-CV-1118-NRM-JRC
      -against-                                       :
                                                     :
NEW YORK COMMUNITY BANCORP,                           :
INC., THOMAS ROBERT CANGEMI and                      :
JOHN J. PINTO,                                        :
                                                     :
                              Defendants.             :
------------------------------------------------------------------  x
```

JAMES R. CHO, United States Magistrate Judge:

Plaintiff Walter Edward Lemm, Jr. ("Lemm"), individually and on behalf of all others

similarly situated, commenced this action against New York Community Bancorp, Inc.

("NYCB") and individual defendants Thomas R. Cangemi ("Cangemi") and John J. Pinto

("Pinto") (collectively, "defendants"), alleging violations of the Securities Exchange Act of 1934

("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995

("PSLRA").  *See Lemm, Jr. v. New York Community Bancorp, Inc. et al.*, No. 24-CV-903

("*Lemm* action"), Dkt. 1 ("*Lemm* Compl.").  Cangemi and Pinto are former executives of NYCB.

On February 13, 2024, Dale Miskey ("Miskey"), individually and on behalf of all others similarly situated, brought a separate action ("*Miskey* action") against NYCB, Cangemi, and Pinto.  *See Miskey v. New York Community Bancorp, Inc. et al.*, No. 24-CV-1118, Dkt. 1 ("*Miskey* Compl.") ¶¶ 17–24.  Miskey alleges similar violations of the federal securities laws by NYCB and its corporate officers.[1]

Before the Court are two motions to consolidate the *Lemm* and *Miskey* actions, and to appoint lead plaintiff and counsel.  The Court considers the motions of the two competing movants filed on behalf of (1) Boston Retirement System ("Boston Retirement"), and (2) Sand Hollow Management, LLC ("Sand Hollow").  *See* Notice of Motion by Boston Retirement, Dkt. 13, and accompanying Memorandum of Law, Dkt. 13-1; Notice of Motion by Sand Hollow, Dkt. 20, and accompanying Memorandum of Law, Dkt. 21.

For the reasons set forth below, the Court consolidates these two actions and appoints Boston Retirement as lead plaintiff in the consolidated case.  The Court also approves Boston Retirement's selection of Labaton Keller Sucharow LLP ("Labaton") as lead counsel.

## Background

### I.    Factual Background

The following facts are drawn primarily from the complaint in the *Lemm* action. Supporting declarations are accepted as true for purposes of this motion.

Both the *Lemm* and *Miskey* actions arise out of NYCB's purchase of Flagstar Bank, N.A. ("Flagstar") and of certain assets and liabilities belonging to Signature Bridge Bank, N.A. ("Signature").  *Lemm* Compl. ¶¶ 18, 21.  Lemm's allegations concern statements made in a series

---

[1] Unless otherwise noted, docket entry citations are to those in the *Lemm* action and appear as "Dkt.__."  References to the docket in the *Miskey* action appears as "*Miskey* Dkt. __."

of quarterly reports published between March 1, 2023 and November 9, 2023 claiming NYCB maintained strong asset quality following acquisition of Flagstar and Signature. *Id.* ¶¶ 19–27.

On January 31, 2024, NYCB released its financials for the quarter ending December 31, 2023 (the "January 31 Release"). *Id.* ¶ 29. The January 31 Release announced substantial quarterly losses and stated NYCB's intent to cut dividends. *Id.* NYCB explained that its actions were the result of NYCB's acquisition of Signature assets, which placed NYCB in a class of banks that are subject to enhanced banking standards and requirements. *Id.* Following this news, NYCB's stock price fell $3.90, or 37.57 percent, closing at $6.47 per share on January 31, 2024. *Id.* ¶ 32. In addition, also on January 31, 2024, Moody's Investors Service announced that it had placed all of NYCB's ratings on review for possible downgrade to junk status. *Miskey* Compl. ¶ 82. On February 1, 2024, NYCB's common stock fell another $0.82 per share. *Id.* ¶ 83.

Further details were revealed on February 5, 2024 when *Bloomberg* reported that "mounting pressure from a top US watchdog" led to NYCB's "surprise decision to slash its dividend and stockpile cash in case commercial real estate loans [went] bad." *Miskey* Compl. ¶ 84. In response, NYCB's stock price fell another $1.20 per share. *Id.* ¶ 86. Lastly, on February 6, 2024, NYCB announced that it had named the former head of Flagstar as executive chairman, followed by a news report stating that the new chairman "said he was coming in to right the ship." *Id.* ¶ 87.

## II.   Procedural History

On February 6, 2024, Lemm brought this action against NYCB and two of its C-suite officers. *See Lemm* Compl. ¶¶ 13–16. The same day, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(i), news of the *Lemm* action was published in *BusinessWire* informing potential class

members of the sixty-day deadline to file a lead plaintiff motion.  *See* Press Release dated February 6, 2024, Dkt. 13-5 ("February 6 Notice").

On February 13, 2024, Miskey, individually and on behalf of all others similarly situated, brought a separate action against NYCB and the same two individual defendants alleging violations of the federal securities laws.  *See Miskey* Compl. ¶¶ 18–24.

On April 8, 2024, six investors timely moved to consolidate the *Lemm* and *Miskey* actions and moved for appointment as lead plaintiff under the PSLRA.  *See* Dkts. 10 (Lin's Living Trust), 13 (Boston Retirement), 14 (Clifford Davis), 20 (Sand Hollow), 22 (Kenneth Dobson), and 24 (Raymond Yeung).  Four movants subsequently notified the Court of their non-opposition to the competing lead plaintiff motions leaving only the motions of Sand Hollow and Boston Retirement before the Court.  *See* Dkts. 28 (Lin's Living Trust), 29 (Yeung), 30 (Dobson), 31 (Davis).

On April 22, 2024, Boston Retirement opposed Sand Hollow's lead plaintiff motion.  *See* Dkt. 32 ("Boston Retirement Opp.").  Sand Hollow likewise opposed Boston Retirement's lead plaintiff motion.  *See* Dkt. 34 ("Sand Hollow Opp.").  Both movants subsequently filed reply memoranda.  *See* Dkts. 35 ("Boston Retirement Reply") and 36 ("Sand Hollow Reply").

## Discussion

### I.  Consolidation

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] has been filed," courts must decide the motion for consolidation before appointing the lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(ii).  A court may consolidate actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2).  Absent prejudice to the defendants, "[c]onsolidation of multiple actions

alleging securities fraud is appropriate where those actions relate to the same public statements and reports." *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886, 2020 WL 8225336, at *2 (E.D.N.Y. Dec. 22, 2020) (quotations omitted). "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007), *reconsidered on other grounds sub nom. In re IMAX Sec. Litig.*, No. 06-CV-6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009).

Based on a review of the two complaints, the Court finds that these two cases involve common questions of law and fact warranting consolidation. All movants seek to consolidate the *Lemm* and *Miskey* actions, and there is no opposition to consolidation. Both actions bring class claims against NYCB and its corporate officers arising under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5. Both complaints allege a similar pattern of materially false and misleading statements relating to NYCB's asset quality and regulatory status. While the *Miskey* complaint alleges a longer class period (between March 1, 2023 and February 5, 2024, *Miskey* Compl. ¶ 1),[2] claiming that class members continued to be injured following the January 31 Release, consolidation is nonetheless appropriate because "the same pattern of alleged misconduct is present over both class periods." *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 205 (E.D.N.Y. 2019) (consolidating cases despite one class period containing an additional two years of allegations). For these reasons, the Court grants the motion to consolidate these two actions.

---

[2] In contrast, Lemm proposes a class period between March 1, 2023 and January 30, 2024. *Lemm* Compl. ¶ 1.

## II.     Notice Requirement

The PSLRA requires the plaintiff who files the first action to publish a notice to the putative class within twenty days of filing the complaint "in a widely circulated national business-orientated publication or wire service" advising members of "the pendency of the action, the claims asserted therein, and the purported class period."  15 U.S.C. § 78u-4(a)(3); *see also Darish v. N. Dynasty Mins. Ltd.*, No. 20-CV-5917, 2021 WL 1026567, at *3 (E.D.N.Y. Mar. 17, 2021).  Even where, as here, no party has objected to the adequacy of notice, "courts have an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA."  *See Chitturi*, 2020 WL 8225336, at *3 (quotations omitted).

On the same day the *Lemm* complaint was filed, notice of the action was published in *BusinessWire*, a satisfactory publication in this Circuit.  *See* February 6 Notice, Dkt. 13-5; *Crass v. Yalla Grp. Ltd.*, No. 21-CV-6854, 2021 WL 5181008, at *4 (S.D.N.Y. Nov. 8, 2021) (*BusinessWire* is a "widely circulated national business-oriented . . . wire service.").  The notice included the class period alleged in the *Lemm* complaint, the purported class of purchasers, and the deadline to file a lead plaintiff motion.  *See* February 6 Notice.  The Court finds the PSLRA's notice requirement has been satisfied.

## III.     Lead Plaintiff Appointment

Under the PSLRA, courts must "appoint as lead plaintiff the member of the class that it determines to be the most adequate plaintiff, *i.e.*, *the member most capable of adequately representing the interests of class members*."  *Chitturi*, 2020 WL 8225336, at *4 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis in original) (quotations omitted).  Courts generally follow a two-step inquiry to determine the most adequate plaintiff.  *See Darish*, 2021 WL 1026567, at *5.  First, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is "the

person or group of persons that:  (1) has either filed the complaint or made a [timely] motion to be appointed as lead plaintiff(s); (2) in the determination of the court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Chitturi*, 2020 WL 8225336, at *4 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)) (quotations omitted).

Once the court is satisfied that it has found the presumptive lead plaintiff, the court may then consider whether that presumption has been "rebutted" by a member of the purported plaintiff class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  This presumption "may be rebutted only upon proof that the presumptively adequate plaintiff either will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Chitturi*, 2020 WL 8225336, at *4 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)) (quotations omitted).

Both Sand Hollow and Boston Retirement filed timely motions to serve as lead plaintiff within the sixty-day period prescribed by § 78u-4(a)(3)(A)(i)(II).  As discussed below, because Sand Hollow has the largest financial interest in the litigation and satisfies a preliminary Rule 23 analysis, it is the presumptive lead plaintiff.  However, Boston Retirement successfully rebuts the presumption of Sand Hollow's adequacy on the basis of Sand Hollow's post-disclosure purchases.  The Court appoints Boston Retirement, an institutional investor that suffered substantial losses, as lead plaintiff.

### A.    Largest Financial Interest

The PSLRA requires courts to "start with the rebuttable presumption that the most adequate plaintiff is the person or entity with the largest financial interest in the relief sought." *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 234 (E.D.N.Y. 2011).  While the statute

does not provide a list of factors to determine which movant has the largest financial interest, courts in this Circuit generally consider:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Yang v. Tr. for Advised Portfolios*, No. 21-CV-1047, 2022 WL 970772, at *3 (E.D.N.Y. Mar. 31, 2022).  Most courts have held that the most important factor is the fourth:  "the approximate losses suffered by the movant."  *Id.*; *see also Bensley*, 277 F.R.D. at 234 (collecting cases).

Sand Hollow suffered the greatest losses during the Class Period at $1,446,642.62.[3]  *See* Sand Hollow Loss Chart, Dkt. 23-3 (Ex. C).  In contrast, Boston Retirement claims losses totaling $889,177.  *See* Boston Retirement Loss Chart, Dkt. 13-4 (Ex. B).  Therefore, Sand Hollow has the largest financial interest in the litigation.

## B.    Adequacy and Typicality

Having found Sand Hollow has the largest financial interest, the Court must also decide whether Sand Hollow "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  A movant must make only "a preliminary showing that the adequacy and typicality requirements have been met."  *Freudenberg v. E*Trade Fin. Corp.*, No. 07 Civ. 8538, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) ("A wide

---

[3] The class period alleged in *Lemm* only extends to January 30, 2024, while *Miskey* extends to February 5, 2024.  Because the Court has found in favor of consolidation, the alleged class period encompasses Sand Hollow's purchases.

ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification.") (citation omitted), *opinion adhered to on reconsideration sub nom. In re Olsten Corp.*, 181 F.R.D. 218, 219 (E.D.N.Y. 1998).

The typicality requirement is satisfied "where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *Lavin v. Virgin Galactic Holdings, Inc.*, No. 21-CV-3070, 2021 WL 5409798, at *7 (E.D.N.Y. Sept. 17, 2021) (quotations omitted).  A movant's claim "need not be identical to the claims of the class to satisfy the typicality requirement."  *City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*, No. 08-CV-1418, 2009 WL 10709107, at *3 (E.D.N.Y. Mar. 9, 2009) (quotations omitted), *report and recommendation adopted*, 2009 WL 10750336 (E.D.N.Y. Mar. 16, 2009).  Rather, courts appoint lead plaintiffs when their "claims are based on the same alleged false or misleading statements and omissions attributed to [d]efendants during the same period as the other potential class members' claims."  *Lavin*, 2021 WL 5409798, at *7.  Here, Sand Hollow claims to have purchased shares of NYCB stock within the class period of the consolidated actions and suffered losses as a result.  Sand Hollow's claims, therefore, are typical of the proposed class.

The adequacy requirement is met where a movant "will fairly and adequately protect the interests of the class."  *Chitturi*, 2020 WL 8225336, at *5 (quotations omitted).  For a lead plaintiff to satisfy this requirement:

> (1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation.  Additionally, the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy.

*Kehoe v. 3D Sys. Corp.*, No. 21-CV-1920, 2021 WL 5408923, at *5 (E.D.N.Y. July 13, 2021).

No evidence is raised to suggest any conflict between Sand Hollow and the remainder of the class. The Court has no doubt that Sand Hollow's selected counsel, Faruqi & Faruqi, L.L.P., is experienced in securities litigation and qualified to litigate this action. Boston Retirement raises arguments against Sand Hollow's adequacy to lead the class, noting that Sand Hollow's principal, Jason Stubbs, does not appear to have experience overseeing securities litigation. Boston Retirement Opp. at 11. Mr. Stubbs, however, attests that he understands the role of lead plaintiff, and he has declared his commitment to resolving the action in an efficient, cost-effective manner to the benefit of the class. Decl. of Jason Stubbs, Dkt. 23-7 ¶¶ 6–7. Despite his lack of experience, absent more compelling proof from Boston Retirement, the Court credits the statements of Mr. Stubbs as to his adequacy to lead the class.[4] Therefore, Sand Hollow is the presumptive lead plaintiff.

### C.  Rebutting the Presumption

The lead plaintiff presumption may be rebutted "only upon proof" that the presumptively adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "Conclusory assertions and mere speculation will not suffice." *Murphy*

---

[4] Boston Retirement further attacks Sand Hollow's adequacy to lead the class, citing records that supposedly pertain to the criminal history of Sand Hollow's principal and owner, Mr. Stubbs. *See* Boston Retirement Opp. at 12. Mr. Stubbs denies these allegations and argues that the records are inaccurate. *See* Sand Hollow Reply at 8. On May 2, 2024, Sand Hollow filed a motion to supplement the record with a further memorandum addressing the criminal history arguments. *Lemm* Dkt. 39; *Miskey* Dkt. 30. The same day, Boston Retirement sought leave to file a sur-reply. *Lemm* Dkt. 42; *Miskey* Dkt. 33. The Court grants Sand Hollow's motion to supplement and Boston Retirement's motion to file a sur-reply, and has reviewed the additional information set forth therein. The Court does not find the alleged criminal history or defamation claim relating to Mr. Stubbs relevant or material to the competing motions for appointment as lead plaintiff, especially in light of the other reasons set forth herein for appointing Boston Retirement as lead plaintiff.

*v. JBS S.A.*, No. 17-CV-3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) (citing *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014)).

Boston Retirement argues that Sand Hollow's atypical trading patterns will subject it to unique defenses "that render [Sand Hollow] incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb); *see* Boston Retirement Opp. at 5–6.  Specifically, Sand Hollow made *all* of its purchases in NYCB securities on or after the date of first alleged corrective disclosure, the January 31 Release.  *See* Boston Retirement Opp. at 6; Sand Hollow Loss Chart, Dkt. 23-3 (showing dates of purchases).  Boston Retirement argues that Sand Hollow's post-disclosure purchases will allow defendants to argue that Sand Hollow invested in NYCB notwithstanding notice of the alleged fraud, undermining the purported ability of the class to assert the fraud-on-the-market theory of reliance.[5]  Boston Retirement Opp. at 7.  Boston Retirement cites a series of cases declining to appoint a movant who purchased all or some of its securities after a corrective disclosure.  *See, e.g.*, *Lundy v. Ideanomics, Inc.*, No. 20-CV-4944, 2020 WL 7389027, at *2–*3 (S.D.N.Y. Dec. 16, 2020) (declining to appoint presumptive lead plaintiff that purchased all shares after third-party reports were published alleging various misrepresentations by defendant company); *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-CV-4420, 2020 WL 5548856, at *6–*7 (S.D.N.Y. Sept. 16, 2020) (similar).

In response, Sand Hollow distinguishes the cases cited by Boston Retirement, arguing

---

[5] "Typically, securities fraud plaintiffs are entitled to a rebuttable presumption of reliance on public, material misrepresentations regarding securities traded in an efficient market, a presumption known as fraud on the market.  Without the fraud-on-the-market presumption of reliance, plaintiffs would have to prove reliance on an individualized basis, which could prevent plaintiffs from proceeding with a class action.  The fraud-on-the-market presumption, however, is rebuttable if a plaintiff purchases securities notwithstanding notice of defendants' misstatements and omissions."  *Shapiro v. TG Therapeutics, Inc.*, No. 22-CV-6106, 2022 WL 16555585, at *3 (S.D.N.Y. Oct. 31, 2022) (internal citations and quotations omitted).

that they involve post-disclosure purchases where the relevant disclosures explicitly revealed fraud or government investigations.  Sand Hollow Reply at 4–5.  In contrast, Sand Hollow argues, the January 31 Release did not "contain[] a *mea culpa* disclosing the fraud or any accusation that the [d]efendants had engaged in fraud."  *Id.* at 4.  Rather, the extent of the alleged fraud was not revealed until the February 5, 2024 article by *Bloomberg* disclosing that NYCB's loan losses and dividend cuts were the result of "mounting pressure" from a federal banking authority.  *Id.* at 6.

In essence, the parties dispute the strength of the January 31 Release, and whether—having learned of the increased loan loss provisions, dividend cuts, and new regulatory status revealed therein—Sand Hollow will be entitled to the presumption that it relied on NYCB's alleged misstatements and omissions during the class period.  Although distinct from the relevant disclosures in *Lundy* and *Hebron*—which contained outright accusations of fraud or misrepresentation from third parties—the January 31 Release is highly germane to the allegations of fraud in the present case.  Plaintiff's allegations largely center on NYCB's failure to disclose that its acquisition of Signature required it to comply with heightened regulatory standards, causing NYCB to overstate its financials during the class period.  *See Lemm* Compl.

¶ 28[6]; *Miskey* Compl. ¶ 77.[7]  By January 31, 2024, NYCB's regulatory status and the impact on

its earnings had already been revealed.  Thus, the argument that Sand Hollow relied on NYCB's

misstatements may be questionable and, therefore, subject the class to unnecessary additional

---

[6] As alleged in paragraph 28 of the *Lemm* complaint, defendants failed to disclose to investors:

> (1) that the Company was experiencing higher net charge-offs and deterioration in its office portfolio;
> (2) that, as a result, NYCB was reasonably likely to incur higher loan losses;
> (3) that, as a result of the foregoing and NYCB's status as Category IV bank, the Company was reasonably likely to increase its allowance for credit losses;
> (4) that the Company's financial results would be adversely affected;
> (5) that, to preserve capital, the Company would reduce quarterly common dividend to $0.05 per common share; and
> (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

*Lemm* Compl. ¶ 28.

[7] As set forth in paragraph 77 of the *Miskey* complaint, defendants failed to disclose:

> (a) that the Signature Bank acquisition would not be immediately accretive to the Company because it caused NYCB to be required to comply with materially enhanced prudential standards . . .;
> (b) that NYCB failed to comply with the materially enhanced prudential standards;
> (c) that NYCB overstated the quality of its commercial office loan assets;
> (d) that NYCB was experiencing higher net charge-offs and deterioration in its commercial office portfolio than represented;
> (e) that NYCB was reasonably likely to incur higher loan losses because it was experiencing higher net charge-offs and deterioration in its commercial office portfolio;
> (f) that NYCB was reasonably likely to be forced to increase its allowance for credit losses due to its status as Category IV bank;
> (g) that NYCB's loan loss provisions were understated so it overstated quarterly earnings and/or understated quarterly losses;
> (h) that NYCB failed to have adequate internal risk or disclosure controls and procedures; and
> (i) that, as a result of the foregoing, defendants' statements about NYCB's business, operations and financial condition were materially false and misleading and/or lacked a reasonable basis at all relevant times.

*Miskey* Compl. ¶ 77.

litigation[8] and threaten class certification.

In any event, the importance of the various disclosures will not be adjudicated at this stage of the litigation.  It is sufficient that Boston Retirement shows proof of a *risk* of unique defenses to rebut the presumption of Sand Hollow's adequacy.  Further, while Sand Hollow is the presumptive lead plaintiff due to its higher losses, the Court takes note of a countervailing Congressional preference for institutional investors like Boston Retirement.  *See In re Gentiva Sec. Litig.,* 281 F.R.D. 108, 113 (E.D.N.Y. 2012) ("[A]lthough not explicitly stated in the PSLRA, . . . many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs."); H.R. Conf. Rep. 104–369, at 32–35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731–34 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class action.").  Accordingly, Boston Retirement successfully rebuts the presumption of Sand Hollow's adequacy.

### D.    Boston Retirement Is Appointed Lead Plaintiff

The Court, instead, grants Boston Retirement's motion for appointment as lead plaintiff. Boston Retirement suffered the second highest losses out of the remaining movants, incurring $889,177 in losses during the class period.  *See* Boston Retirement Loss Chart, Dkt. 13-4 (Ex. B).  In addition, Boston Retirement readily satisfies the preliminary Rule 23 analysis set forth above.  Boston Retirement is typical because it claims to have purchased NYCB shares within the class period and suffered resulting losses.

---

[8] *See also In re Hebron*, 2020 WL 5548856 at *7 n.7 ("[T]hat there is conflicting authority on this point does not show that [the presumptive lead plaintiff] is not subject to an arguable or potential unique defense.  If anything, the conflicting authority on this point may enhance the risk that, were [the presumptive lead plaintiff] to lead the class, this issue would divert attention from the merits of the core claims in this case or saddle the class with a representative whose claims carried a unique infirmity.").

The Court concludes that Boston Retirement satisfies the preliminary adequacy inquiry as well.  Boston Retirement has no discernible conflict of interest with the purported class, and it has retained competent and experienced counsel.  In opposition, Sand Hollow cites a prior case led by Boston Retirement, in which a court in this Circuit denied class certification.  *In re Allergan PLC Sec. Litig.*, No. 18-CV-12089, 2020 WL 5796763, at *6 (S.D.N.Y. Sept. 29, 2020).  In *Allergan*, the Court had appointed Boston Retirement as lead plaintiff and expressly appointed only one firm as lead counsel.  *Id.*  In direct contravention of the court's order, Boston Retirement retained two law firms, persuading the court to deny class certification on adequacy grounds.  *Id.*  However, Sand Hollow fails to raise any proof that Boston Retirement is an inadequate lead plaintiff in *this* litigation.  *See Shapiro*, 2022 WL 16555585, at *5 n.2 (rejecting same argument and noting that Boston Retirement selected a different, single firm as lead counsel).  Accordingly, the Court appoints Boston Retirement as lead plaintiff.

## IV.   Appointment of Lead Counsel

The PSLRA permits the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  15 U.S.C. § 78u-4(a)(3)(B)(v).  Boston Retirement has selected Labaton, an experienced law firm in securities class action litigation.  Sand Hollow does not challenge Boston Retirement's selection.  Based on the firm's submissions relating to its background and experience, the Court finds that this firm is qualified to serve as lead counsel.

### Conclusion

For the reasons set forth above, the Court grants Boston Retirement's motion to consolidate the *Lemm* and *Miskey* actions and appoints Boston Retirement as lead plaintiff with Labaton as lead counsel.  The other pending motions for appointment of lead plaintiff and approval of lead counsel are rendered moot.

**SO ORDERED**

Dated: Brooklyn, New York
        May 7, 2024

s/ James R. Cho_____
James R. Cho
United States Magistrate Judge